UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVOLUSION CONCEPTS, INC., | Case No.:  18cv871-DMS(MSB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION FOR ORDER:** |
| CROSS ENGINEERING, LLC, et al., | |
| Defendants. | **(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT AND RELATED RELIEF [ECF NO. 152]** |
| | **AND** |
| | **(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ORDER ENFORCING SETTLEMENT AGREEMENT TERM TO DISMISS ACTION [ECF NO. 153]** |

Before the Court are Plaintiff's Evolusion Concepts Inc.'s "Motion for Enforcement of Settlement Agreement and Related Relief" ("Motion for Enforcement") [ECF No. 152] and Defendants' Cross Engineering, LLC's and Wes Cross's "[Motion] for Order Enforcing

Settlement Agreement Term to Dismiss Action"[1] ("Motion to Dismiss Action") [ECF No. 153].  This Report and Recommendation is submitted to Chief United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 17.1 of the United States District Court for the Southern District of California.  After reviewing the parties' pleadings, and for the reasons discussed below, the Court **RECOMMENDS** that the District Court:  (1) **GRANT IN PART and DENY IN PART** Plaintiff's Motion for Enforcement [ECF No. 152] and (2) **GRANT IN PART and DENY IN PART** Defendants' Motion to Dismiss Action [ECF No. 153].

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On May 4, 2018, Plaintiff Evolusion Concepts, Inc. ("Evolusion") filed a Complaint against Defendant Cross Engineering, LLC ("Cross Engineering").  (ECF No. 1.)  On December 17, 2018, Plaintiff filed a First Amended Complaint ("FAC"), the operative pleading in this case, against Defendants Cross Engineering and Wes Cross.  (ECF No. 29.)  Plaintiff's FAC alleged the following causes of action:  (1) patent infringement; (2) declaratory judgment; (3) breach of contract; (4) trade libel; (5) intentional interference with prospective economic advantage; and (6) unfair competition.  (Id. at 1, 8–17.)  With respect to the patent infringement cause of action, Plaintiff alleged that it owns United States Patent Number 8,756,845 ("the '845 Patent") entitled "Method and Device for Converting Firearm with Detachable Magazine to a Firearm with Fixed Magazine."  (Id. at 5.)  Plaintiff further alleged that Defendants "infring[ed] the '845

---

[1] The Court notes that Defendants' notice of motion is titled "Notice of Motion of Cross Engineering, LLC, and Wes Cross for Order Enforcing <u>Settlement Conference Provision</u> to Dismiss Action."  (ECF No. 153 at 1 (emphasis added).)  Defendants' enclosed Memorandum of Points and Authorities, however, states that it is filed in support of a "Motion of Cross Engineering, LLC, and Wes Cross for Order Enforcing <u>Settlement Agreement Term</u> to Dismiss Action."  (ECF No. 153-1 at 1 (emphasis added).)  Both the Notice and the Memorandum of Points and Authorities ask the Court to enforce the provision of the parties' Settlement Agreement requiring Plaintiff to dismiss the action within five days of the signing of the Settlement Agreement.  (See ECF No. 153 at 1; 153-1 at 4.)  Accordingly, the Court construes Defendants' motion as a Motion for Order Enforcing <u>Settlement Agreement Term</u> to Dismiss Action.

1   patent by making, using, selling, offering for sale, and/or importing a number of

2   magazine release products that are covered by one or more claims of the '845 patent[.]"

3   (Id. at 6.)  On December 20, 2018, Defendants filed an Answer to Plaintiff's FAC.  (ECF

4   No. 31.)  Defendants denied infringement of the '845 Patent, and asserted, *inter alia*,

5   that Claims 1, 8, and 15 of the '845 Patent were invalid under 35 §§ U.S.C. 102, 103, and

6   112(b).  (Id. at 4-5, 7.)

7          On May 7, 2019, the District Court held a Claims Construction Hearing, and on

8   May 21, 2019, issued an "Order Construing Claims."  (See ECF Nos. 63, 65.)  On May 29,

9   2019, Defendants filed a motion seeking clarification of the Claim Construction

10  Order.  (ECF No. 66.)  On July 18, 2019, the District Court issued an "Order Granting

11  Defendants' Motion for Clarification of Claim Construction Order."  (ECF No. 86.)

12         On August 7, 2019, this Court held a Mandatory Settlement Conference, during

13  which the case settled and the terms of the parties' settlement were placed on the

14  record.  (See ECF Nos. 96, 97, 100.)  The basic terms of the settlement recited on the

15  record included a payment of $68,500 within ninety days of the date of the Mandatory

16  Settlement Conference, "payments of $3,805.56 [beginning on January 1st, 2020], made

17  in 18 monthly payments thereafter [for] a total of $68,500," and "an ongoing royalty

18  rate of 18.77 percent for every accused product sold by Cross Armory."  (ECF No. 100 at

19  8.)  The parties were to generate and execute a written agreement after the Mandatory

20  Settlement Conference.  (Id. at 6.)

21         On August 7, 2019, the parties signed a form entitled "Consent to Exercise of

22  Settlement Jurisdiction by a United States Magistrate Judge and Order of Reference,"

23  which the District Judge signed on August 12, 2019.  (ECF No. 99.)  The document stated

24  the following:

25         The parties, having settled the case, by signing below further voluntarily
          consent to the jurisdiction of United States Magistrate Judge Michael S.
26         Berg to decide:

27

28

> (1)  all disputes regarding settlement terms arising during the documentation thereof not resolved by the parties themselves; and,
>
> (2)  all disputes arising out of the terms of the settlement agreement once completed;
>
> AND, that any decision by the Magistrate Judge regarding any such dispute(s), 1 or 2, above, shall be **FINAL AND BINDING, WITH NO APPEAL.**

(Id.)  The document further provided that "Magistrate Judge Berg shall retain jurisdiction until August 7, 2020."  (Id.)

In light of the settlement, the Court ordered the parties to file their Joint Motion to Dismiss the case no later than November 29, 2019.  (ECF No. 97 at 2.)  The parties required more time to finalize their written settlement agreement, mainly the definition of "Licensed Product," and the Court therefore continued the deadline to file the Joint Motion to Dismiss the case.  (See ECF Nos. 112, 115).

The parties did not file the Joint Motion to Dismiss by the set deadline.  (See Docket.)  The Court subsequently held a Settlement Disposition Conference, and on January 17, 2020, issued an "Order Following Settlement Disposition Conference."  (ECF Nos. 116, 117, 118.)  The January 17, 2020 Order required Defendants, among other things, to make eighteen monthly payments beginning on January 24, 2020, in the amount of $3,805.56, and to pay "an ongoing monthly royalty for every accused product sold" in the amount of 18.77 percent, proceeding for the life of the '845 Patent, due within 15 days of the end of the respective preceding month.  (ECF No. 118 at 1-2.)  The Order further stated that "[t]he term 'kits' within the settlement agreement, includes the package that contains an identified licensed product plus any other product sold by Cross Engineering within that package that would infringe upon the '845 Patent.  Said 'kits' will be royalty bearing."  (Id. at 2.)

On January 26, 2020, Defendants filed a Motion for Reconsideration asking the Court to reconsider the January 17, 2020 Order.  (ECF No. 119.)  On May 7, 2020, the Court denied the Motion for Reconsideration and directed the parties to include in their

written settlement agreement the following definition of "Licensed Product" proposed by Plaintiff:

> **Licensed Product.**  "Licensed Product" means the Safe Mag .308/AR10, Safe Mag–MIL-SPEC AR-15/M4 (including Special Red Edition), the Safe Mag 2–ALL AR-15/M4 magazine release product, and kits including such.  Licensed Product further includes components from Cross Engineering or third parties that are part of or used in conjunction with a Licensed Product, and any product manufactured, sold, produced, or distributed, now or in the future, by Cross Engineering that would infringe the '845 Patent in the absence of this Agreement.

(ECF No. 147 at 7.)

On May 29, 2020, Defendants filed a petition for writ of mandamus with the United States Court of Appeals for the Federal Circuit.  (ECF No. 150.)  They sought a writ of mandamus directing this Court to vacate its January 17, 2020 and May 7, 2020 orders, and require inclusion in the settlement agreement of a different definition of "Licensed Product" proposed by Defendants.  (See ECF No. 151 at 1-2; see also Decl. of Stuart Clark, ECF No. 153-2 ("Clark Decl.") at 3 (explaining that in their petition for writ of mandamus, Defendants asked the court "to direct the Magistrate Judge to substitute a definition limited to paying royalties on accused Safe Mag products, and only on those accused Safe Mag products).)  On July 17, 2020, the United States Court of Appeals for the Federal Circuit denied Defendants' petition for mandamus, reasoning, in relevant part, that "Cross has not shown a clear and indisputable right to its requested relief."  In re Cross Eng'g, LLC, 820 F. App'x. 1021, 1023 (Fed. Cir. 2020).[2]

---

[2] The Court of Appeals for the Federal Circuit noted, in relevant part, that "Cross's position is that licensed products should be limited to the accused products, which it believes are the Safe Mag products only—not kits including those products."  In re Cross Eng'g, LLC, 820 F. App'x. at 1023.  With respect to "Cross['s] argu[ment] that the complaint defined the accused products as limited to the Safe Mag products[,]" the appellate court stated that "as Cross acknowledges, the complaint also references kits as part of Evolusion's infringement allegations."  Id. at 1024.  The appellate court further stated that "Evolusion included kits in the infringement contentions it served on Cross."  Id. n.2. Additionally, the appellate court noted in the footnote the following:

On July 20, 2020, the parties fully executed their written Settlement Agreement, which included the definition of "Licensed Product" quoted above.  (ECF No. 152-2 at 2, 11; see also Clark Decl. at 3.)  On August 17, 2020, Plaintiff filed a "Stipulation of Consent to Jurisdiction by a United States Magistrate Judge."  (ECF No. 154.)  In the notice, Plaintiff "stipulate[d] its continuing consent to jurisdiction by a United States Magistrate Judge until August 7, 2021, consistent with the terms of the parties' Consent to Jurisdiction by a United States Magistrate Judge (ECF No. 99) executed on August 7, 2019."  (Id. at 2.)

On August 19, 2020, Defendants filed a "Notice of Non-Consent by Cross Engineering, LLC and Wes Cross to Jurisdiction by a United States Magistrate Judge."  (ECF No. 155.)  Defendants stated that they did not "consent to the extension of the jurisdiction of Hon. Michael S. Berg under the consent to jurisdiction dated August 7, 2020."  (Id. at 1.)  Further, Defendants "decline[d] to stipulate to Hon. Michael S. Berg having jurisdiction to adjudicate the motion of Evolusion Concepts, Inc. for Enforcement of Settlement Agreement and Related Relief[.]"  (Id.)

After considering the parties' notices [ECF Nos. 153, 154], the Court issued an order requiring further briefing "regarding this Court's jurisdiction or lack thereof to address the pending motions [ECF Nos. 152 & 153]."  (ECF No. 158.)  The parties timely filed their respective briefs.  (See ECF Nos. 162, 163, 164; see also ECF No. 161.)  The case was subsequently reassigned to Chief United States District Judge Sabraw, in light of the "expiration of the parties' consent to Magistrate Judge Jurisdiction."  (ECF No. 168.)

---

To the extent that Cross contends that the definition of Licensed Product improperly covers non-infringing components, Evolusion has represented that "[i]t has always been Evolusion's position (and the function of Section 1.3 [of the settlement agreement] ) that . . . components sold separately from the kit are not royalty-bearing, unless they also infringe the '845 Patent.  That is the structure of . . . the settlement agreement in this case."

Id. n.1.

6

1 │ Judge Sabraw referred Plaintiff's Motion for Enforcement [ECF No. 152] and Defendant's

2 │ Motion to Dismiss Action [ECF No. 153] to this Court for a Report and Recommendation.

3 │ (Id. at 1-2.)

4 │      The issues, arguments, and supporting documentation in the pending Motion for

5 │ Enforcement [ECF No. 152] and Motion to Dismiss Action [ECF No. 153] overlap.  The

6 │ Court will therefore address both motions in this Report and Recommendation.

7 │ **II.  DEFENDANTS' MOTION FOR ORDER ENFORCING SETTLEMENT AGREEMENT TERM**

8 │ **TO DISMISS ACTION [ECF NO. 153]**

9 │    **A.  Parties' Arguments**

10 │      Defendants move for an order enforcing the provision of the parties' Settlement

11 │ Agreement requiring Plaintiff to dismiss this action within five days of the signing of the

12 │ Settlement Agreement.  (ECF No. 153-1 at 4.)  Defendants argue that "the condition

13 │ precedent to paying all amounts due under the agreement at the time of signing was

14 │ satisfied by the Cross Parties making that payment on July 24, 2020," but Plaintiff has

15 │ refused to dismiss the action asserting that Defendants have not made all required

16 │ royalty payments.  (Id. at 14–16.)  Defendants contend that the kits on which Plaintiff

17 │ claims royalties are not royalty bearing because Defendants are not required to pay

18 │ royalties on components of kits that would not infringe the '845 Patent.  (Id. at 17.)

19 │ Defendants assert that "although it was denied, the Cross parties' writ petition resulted

20 │ in clarification that royalties are not payable on non-infringing products under the

21 │ Court's definition."  (Id. at 12–14.)  Defendants assert that since Plaintiff refused to

22 │ voluntarily dismiss the action, the Court should order an involuntary dismissal pursuant

23 │ to Federal Rule of Civil Procedure 41(b), the Court's inherent power to order dismissal as

24 │ a sanction, as well as the Court's power to enforce a settlement agreement.  (Id. at 16–

25 │ 17.)

26 │      Plaintiff responds that Defendants have not satisfied the condition precedent to

27 │ dismissal, pursuant to the dismissal provision of the parties' Settlement Agreement,

28 │ because Defendants have not made any royalty payments for the sales of kits.  (ECF No.

1 165 at 4–6, 8.)  Plaintiff asserts that "Licensed Product" is clearly defined in Section 1.3

2 of the Settlement Agreement and includes Cross Engineering's "kits," and this Court

3 found that "the entire kit, regardless of its name, is royalty bearing."  (Id. at 5.)  Plaintiff

4 states that Defendants' payments for the sales of kits amount to $0.00, and Defendants

5 justify this nonpayment by "inventing a new definition of 'kit'."  (Id. at 6.)  Plaintiff

6 contends that Defendants are essentially rearguing the scope of "accused products" and

7 the definition of "kits"—the exact issues that this Court and the Federal Circuit decided

8 in Plaintiff's favor.  (Id. at 5.)  Plaintiff further maintains that Defendants' arguments

9 about "noninfringing" or "incapable of infringing" components are irrelevant, because

10 this case settled before a determination of infringement, and "[o]nly the scope of

11 accused products and licensed products matters for purposes of determining Cross's

12 compliance with the settlement."  (Id. n.1.)

13       Defendants reply that they have "paid all royalties except on kits" because they

14 have not sold any royalty bearing kits.  (ECF No. 166 at 5; see also id. at 13.)  Defendants

15 assert that "the definition of 'Licensed Product' in the settlement agreement, and the

16 related definition of 'kits' in the Magistrate Judge's order ECF No. 118, . . . determine

17 the payment obligations of Cross Engineering."  (Id. at 5.)  Defendants contend that "the

18 only royalty bearing kits are those sold in a 'package' that includes a Safe Mag and 'any

19 other product sold by Cross Engineering within that package that would infringe upon

20 the '845 Patent.'"  (Id. at 8.)  Defendants maintain that they are not required to pay

21 royalties on unspecified kits that are not sold in a "package" with a Safe Mag and that

22 would not infringe upon the '845 Patent.  (Id. at 8–9; see also id. at 11.)  Defendants

23 argue that because they have paid "royalties on all other licensed products on which

24 royalties are payable," they have satisfied the condition precedent to Plaintiff's

25 dismissal of the action.  (Id. at 5, 13.)  Defendants assert that Plaintiff "should be

26 ordered to [dismiss the action], failing which the Court should dismiss the action" with

27 prejudice.  (Id. at 5; see also id. at 13.)  Defendants also seek the award of attorney's

28 fees and costs pursuant to Section 14 of the Settlement Agreement in the amount of

1    $7,644.26, as well as "further fees and costs associated with the Dismissal Motion."  (<u>Id.</u>

2    at 13.)

3    **B.  <u>Legal Standard</u>**

4    Federal Rule of Civil Procedure 41(b) states the following:  "**Involuntary Dismissal;**

5    **Effect.**  If the plaintiff fails to prosecute or to comply with these rules or a court order, a

6    defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).

7    District courts have inherent power to impose sanctions for "conduct which abuses the

8    judicial process."  <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 44–45 (1991).  Dismissal

9    sanction is available when "a party has engaged deliberately in deceptive practices that

10   undermine the integrity of judicial proceedings" because "courts have inherent power

11   to dismiss an action when a party has willfully deceived the court and engaged in

12   conduct utterly inconsistent with the orderly administration of justice."  <u>Leon v. IDX Sys.</u>

13   <u>Corp.</u>, 464 F.3d 951, 958 (9th Cir. 2006) (quoting <u>Anheuser-Busch, Inc. v. Natural</u>

14   <u>Beverage Distribs.</u>, 69 F.3d 337, 348 (9th Cir. 1995)).  Dismissal sanction should be

15   imposed only in extreme circumstances, "where the violation is 'due to willfulness, bad

16   faith, or fault of the party.'"  <u>In re Exxon Valdez</u>, 102 F.3d 429, 432 (9th Cir. 1996)

17   (quotation omitted).  In deciding whether to dismiss a case as a sanction, district courts

18   must weigh the following factors:  "(1) the public's interest in expeditious resolution of

19   litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the

20   party seeking sanctions; (4) the public policy favoring disposition of cases on their

21   merits; and (5) the availability of less drastic sanctions."  <u>Leon</u>, 464 F.3d at 958

22   (quoting <u>Anheuser–Busch</u>, 69 F.3d at 348).

23   A district court has the inherent power to enforce "a settlement agreement

24   involving an action pending before it."  <u>In re City Equities Anaheim, Ltd.</u>, 22 F.3d 954,

25   957 (9th Cir. 1994); <u>TNT Mktg., Inc. v. Agresti</u>, 796 F.2d 276, 278 (9th Cir. 1986); <u>Dacanay</u>

26   <u>v. Mendoza</u>, 573 F.2d 1075, 1078 (9th Cir. 1978).  This inherent power applies to

27   settlement agreements entered on the record but later reneged on by one party.  <u>See</u>

28   <u>Henderson v. Yard House Glendale, LLC</u>, 456 F. App'x 701, 702 (9th Cir. 2011) ("The

1  district court did not abuse its discretion in enforcing the settlement agreement after

2  [plaintiff] entered into it on the record in open court, but later refused to execute a

3  formal agreement to dismiss the action[.]").  A district court may only enforce a

4  settlement agreement if the following conditions are met:  (1) the settlement

5  agreement is complete, and (2) the settlement agreement is the result of the parties or

6  their authorized representatives agreeing upon the terms of the settlement.  Maynard v.

7  City of San Jose, 37 F.3d 1396, 1401 (9th Cir. 1994); Callie v. Near, 829 F.2d 888, 890 (9th

8  Cir. 1987); Dacanay, 573 F.2d at 1078.  Generally, "[t]he construction and enforcement

9  of settlement agreements are governed by principles of local law which apply to

10  interpretation of contracts[.]"  United Commercial Ins. Serv., Inc. v. Paymaster Corp.,

11  962 F.2d 853, 856 (9th Cir. 1992) (quotation omitted).

12    C. **Analysis**

13         This action settled on August 7, 2019 at the court-conducted Mandatory

14  Settlement Conference, during which the parties stated the terms of the settlement on

15  the record.  (See ECF Nos. 96, 97, 100.)  The parties fully executed their written

16  Settlement Agreement on July 20, 2020.[3]  (ECF No. 153-1 at 4.)  Accordingly, the

17  Settlement Agreement is a complete agreement, agreed to by all the parties in this case.

18  Plaintiff, however, refused to dismiss the action asserting that Defendants have not

19  satisfied condition precedent to dismissal set out in the dismissal clause of the parties'

20  Settlement Agreement.  (See ECF No. 165 at 5–6, 8.)

21         Section 4 of the parties' Settlement Agreement provides the following:

22    **DISMISSAL OF DISTRICT COURT ACTION**

23         No later than five (5) days after this Agreement has been signed by

24  all Parties, and subject to Cross Engineering making payments under

25  Section 5 that have become due by the time of signature, Evolusion shall

26  dismiss the Action, with prejudice.  The Cross Parties agree to do all things

27

28  [3] Defendants were the last party to sign the Settlement Agreement on July 20, 2020.  (ECF No. 152-2 at 11.)

10

that may be reasonably necessary to assist Evolusion to accomplish the dismissal of the Action under this paragraph.

(ECF No. 152-2 at 3 (emphasis added).)  Section 5 of the Settlement Agreement further provides:

**SETTLEMENT AND ROYALTY PAYMENTS**

    **5.1**    **Settlement Payment.**  Cross Engineering shall pay Evolusion one hundred and thirty-seven thousand dollars ($137,000.00), paid as follows:

    **5.1.1**  an Initial Settlement Payment of sixty-eight thousand, five hundred dollars ($68,500.00) paid to Evolusion within ninety (90) days of the Effective Date, *i.e.*, on or before November 5, 2019; and

    **5.1.2**  eighteen (18) Monthly Settlement Payments of three thousand, eight hundred, and five dollars and fifty-six cents ($3,805.56) paid to Evolusion beginning on January 1, 2020, each Monthly Settlement Payment due on or before the first business day of every month.

(Id. at 3–4.)  Finally, Section 5.2 of the Settlement Agreement provides, in relevant part:

    **5.2**    **Royalty Payments on Future Sales.**  For every Licensed Product sold on or after July 1, 2019, Cross Engineering agrees to pay Evolusion a royalty of <u>18.77% of the sales price of each Licensed Product</u>. For the avoidance of doubt and by way of example, if Cross Engineering sells a Licensed Product for $75.99, the royalty due to Evolusion for that Licensed Product would be $75.99 x 18.77% for an amount of $13.68. Evolusion must receive the royalty payment, along with the Payment Reporting Form (as set for in Section 13.2 and Exhibit A), within fifteen (15) days of the end of the respective preceding reporting period.  For example, for all royalties incurred on Licensed Products sold during a reporting period ending on April 30, the respective monthly royalty payment and Royalty Report must be received by Evolusion no later than May 15.

1   (Id. at 4 (emphasis added).)  Accordingly, the dismissal provision of the parties'

2   Settlement Agreement requires Cross Engineering to "mak[e] payments under Section 5

3   that have become due by the time of signature[,]" (July 20, 2020), and Section 5 sets

4   forth Cross Engineering's obligation to pay "a royalty of 18.77% of the sales price of each

5   Licensed Product" for "every Licensed Product sold on or after July 1, 2019."  (Id. at 3–

6   4.)

7          The parties do not dispute that Defendants' payment of all settlement and royalty

8   amounts under Section 5 of the Settlement Agreement "that have become due by the

9   time of signature" of the Agreement is a condition precedent to the dismissal of the

10   action by Plaintiff.  (See ECF Nos. 153, 165, 166; see also ECF No. 152-2 at 3.)  The

11   documents presented to the Court establish that as of the filing of the instant Motion to

12   Dismiss Action [ECF No. 153], Defendants have made all payments due under the

13   parties' Settlement Agreement, with the exception of royalties for the sales of kits.  (See

14   ECF No. 152-7, Declaration of Charles Blazer ("Blazer Decl.") at 3 (stating that "on

15   July 24, 2020, Cross tendered a payment purportedly for the overdue amounts owed";

16   however, "all of Cross's royalty reporting forms included a line item for 'Kits that include

17   a Safe Mag and another products that would infringe the '845 Patent,' showing zero (0)

18   units sold, amounting to $0.00 in sales and $0.00 in royalty payments[,]" and  "[n]one of

19   Cross's royalty reporting forms reported any sales of licensed kits."); Clark Decl. at 3

20   (declaring that "Cross Engineering made all of the royalty and other payments—

21   including accrued interest—to Evolusion on July 24, 2020, in the sum of $40,313.75.");

22   ECF No. 157-1, Declaration of Savannah Cross ("Cross Decl.") at 2 (stating that as a Chief

23   Executive Officer of Cross Engineering, she "prepared a reconciliation of all royalties

24   owed by Cross Engineering under the settlement agreement[,]" which included "interest

25   at 10% from the due date of each royalty and settlement payment[,]" and on July 24,

26   2020, wire transferred "$40,313.75, shown in the reconciliation to be owed by Cross

27   Engineering" to Plaintiff's counsel's bank account.); see also ECF No. 114-1, Declaration

28

1  of Stuart Clark (Clark Decl. I) at 1–2 (stating that Defendants paid the $68,500 initial

2  settlement payment, as well as the accrued royalty payments).)

3       Plaintiff asserts that the condition precedent to dismissal of this action has not

4  been satisfied because Defendants have not made any royalty payments for the sales of

5  kits, while Defendants argue that they satisfied the condition precedent because they

6  made no sales of royalty bearing kits.  Accordingly, the Court needs to determine

7  whether the condition precedent to dismissal has been satisfied; namely—whether

8  Defendants have made all required royalty payments "that have become due by the

9  time of signature" of the Settlement Agreement on July 20, 2020.  (See ECF No. 152-2 at

10  3); see also Silicon Image, Inc. v. Genesis Microchip Inc., 395 F.3d 1358, 1363 (Fed. Cir.

11  2005) (holding that "the district court cannot enter a dismissal until [plaintiff] receives

12  the payment required as a condition precedent to dismissal and so certifies to the

13  court[,]" where "[defendant's] payment and [plaintiff's] stipulation to the court that it

14  had received such payment [we]re conditions precedent to dismissal of the underlying

15  infringement claims.").

16       Defendants contend that the kits on which Plaintiff claims royalties are not royalty

17  bearing because Defendants are not required to pay royalties on components of kits

18  that would not infringe the '845 Patent.  (See ECF No. 153 at 5, 17.)  Defendants'

19  argument lacks merit.  On August 7, 2019, Defendants agreed on the record to pay "an

20  ongoing royalty rate of 18.77 percent for every accused product sold by Cross

21  Armory[,]" (ECF No. 100 at 8 (emphasis added)), and on July 20, 2020, fully executed the

22  written Settlement Agreement requiring Cross Engineering to pay "a royalty of 18.77%

23  of the sales price of each Licensed Product" for every Licensed Product sold on or after

24  July 1, 2019, (ECF No. 152-2 at 4 (emphasis added); see also id. at 11).  The Settlement

25  Agreement clearly defines "Licensed Product" in Section 1.3 as follows:

26       "Licensed Product" means the Safe Mag .308/AR10, Safe Mag–MIL-SPEC
       AR-15/M4 (including Special Red Edition), the Safe Mag 2–ALL AR-15/M4
27       magazine release product, and kits including such.  Licensed Product
28       further includes components from Cross Engineering or third parties that

13

1   are part of or used in conjunction with a Licensed Product, and any product

2   manufactured, sold, produced, or distributed, now or in the future, by

3   Cross Engineering that would infringe the '845 Patent in the absence of this
    Agreement.

4

5   (Id. at 2 (emphasis added).)  Accordingly, the parties' Settlement Agreement requires

6   payment of royalties on kits, and states that the royalty bearing kits include "the Safe

7   Mag .308/AR10, Safe Mag–MIL-SPEC AR-15/M4 (including Special Red Edition), the Safe

8   Mag 2–ALL AR-15/M4 magazine release product."  (Id.)  Licensed Product also includes

9   "any product manufactured, sold, produced, or distributed, now or in the future, by

10  Cross Engineering that would infringe the '845 Patent in the absence of this

11  Agreement."  (Id.)  This definition is consistent with the terms of the parties' settlement

12  recited on the record, requiring "an ongoing royalty rate of 18.77 percent for every

13  accused product sold by Cross Armory."  (ECF No. 100 at 8.)

14         Contrary to Defendants' arguments, the Court's Order Following Settlement

15  Disposition Conference [ECF No. 118] did not alter the definition of "Licensed Product"

16  in Section 1.3 of the Settlement Agreement; it merely clarified that a licensed kit

17  "includes the package" containing the Safe Mag products, and that any other package

18  including a product sold by Defendants "that would infringe upon the '845 Patent"

19  would also be a licensed royalty bearing kit.  (Id. at 2.)  Therefore, regardless of whether

20  the kit includes a "Safe Mag" or a product identical to a Safe Mag that has a different

21  name, "[s]aid 'kits' will be royalty bearing."  (See id.)  As correctly argued by Plaintiff,

22  this definition is consistent with Section 1.3 of the Settlement Agreement and "makes

23  sense in the context of Cross's efforts to escape paying royalties by renaming its

24  products to 'bundles'."  (See ECF No. 159 at 7.)  The definition is also consistent with the

25

26

27

28

1  Court's Order Denying Defendants' Motion for Reconsideration.  (ECF No. 147 at 6

2  (stating that "the entire kit, regardless of its name, is royalty bearing."[4]).)

3        Defendants quote some of this Court's statements out of context and offer an

4  overly restrictive definition of a royalty bearing kit.  (<u>See</u> ECF Nos. 153, 166.)  The

5  Settlement Agreement, however, neither requires the royalty bearing kit to include both

6  a Safe Mag and other product that would infringe the '845 Patent, nor limits the royalty

7  base to only a single component inside the kit.  (<u>See</u> ECF No. 152-2.)  Defendants'

8  misconstrued definition would essentially allow them to unilaterally decide whether the

9  other product in the kit infringes.  This would encourage further patent litigation in

10 contradiction of the express purpose of the Settlement Agreement, which is "to avoid

11 the expense and uncertainties of litigation" and settle the case.  (<u>See</u> <u>id.</u> at 2 (containing

12 the following language in the parties' Settlement Agreement:  "recognizing and wishing

13 to avoid the expense and uncertainties of litigation, the Parties have settled in principle

14 the dispute between them which forms the basis of the Action, and placed the

---

17 [4]  The Order stated the following, in relevant part:

18        In support of their motion for reconsideration, Defendants cite paragraph three
       of the Court's January 17, 2020 Order, which states the following:  "The term 'kits'
19     within the settlement agreement, includes the package that contains an identified
       licensed product plus any other product sold by Cross Engineering within that package
20     that would infringe upon the '845 Patent.  Said 'kits' will be royalty bearing."  (Mot. at
       21 (citing ECF No. 118 at 2).)  Defendants allege that this paragraph created "confusion"
21     with respect to what language should be included in Section 1.3 of the parties' draft
       settlement agreement defining "Licensed Product."  (<u>See</u> Mot.)
22        Contrary to Defendants' contention, <u>the above paragraph does not direct the
23     parties to make changes to Section 1.3 of their settlement agreement</u>; it merely clarifies
       that the <u>entire kit, regardless of its name, is royalty bearing</u>.  After extensive questioning
24     of the parties' counsel and having considered the parties' arguments during the
       January 7, 2020 hearing, <u>the Court unequivocally stated that it adopted the definition of
25     "Licensed Product" proposed by Plaintiff</u>.

26 (ECF No. 147 at 5–6 (emphasis added).)

1   settlement terms on the record, and they now wish to memorialize in writing the

2   complete terms of that settlement[.]").)

3          Plaintiff is correct that because the case settled, only the scope of accused[5] and

4   licensed products is at issue when determining Defendants' obligation to pay royalties

5   under the terms of the parties' Settlement Agreement; there is no need to litigate the

6   issue of infringement to determine whether the accused kits infringe, whether each

7   individual component inside the accused kits infringe, or whether a group of non-

8   infringing individual parts may give rise to an infringing combination.  (See ECF No. 165

9   at 5 n.1; ECF No. 152-1 at 18–20); see also Silicon Image, Inc. v. Genesis Microchip, Inc.,

10  271 F. Supp. 2d 840, 845, 879 (E.D. Va. 2003) (finding that royalties were due on all

11  products at issue "without regard to whether those products infringe[d] any [of

12  plaintiff's] patent claims . . . [because] only this interpretation will reasonably effectuate

13  the [settlement agreement's] goal of settling, for all time, the patent infringement

14  issues in the pending litigation"; rejecting defendant's argument that "the royalty base

15  [was] limited to those [products] that actually infringe the patent claims described in the

16  [settlement agreement's] license grants.").

---

19  [5] Specifically, Plaintiff argues that

20          the only relevant question is what products were accused of infringement.  That
21          question is answered not by Cross's unilateral, conclusory opinion, but rather by looking
           to the Complaint and Infringement Contentions, which were both known when Cross
22          agreed to settle.  And as repeatedly observed by this Court and the Federal Circuit, the
           Complaint and Infringement Contentions identified Cross's California Compliance Kits as
23          accused products.  E.g., ECF No. 127-5 at 38 (January 7 Hearing Transcript) (the Court
           pointing out to Cross's counsel that paragraph 29 of the Complaint identifies Cross's
24          "AR15 California compliance kit" as an infringing product), 39-40 (the Court pointing out
           to Cross's counsel that the Infringement Contentions identified Cross's California
25          compliance kits as accused products); Exhibit B at 4-6 (Federal Circuit Order, citing
           the Complaint and Infringement Contentions); see ECF No. 29, ¶ 29 (operative
26          Complaint); ECF No. 29-10 (Complaint Exhibit J, "Infringement of Claim 15 by CA
           Compliance Kit"); ECF No. 127-6 at 1-2 (Infringement Contentions).

28  (ECF No. 152-1 at 20.)

1    Defendants have only reported sales of "'Kits that include a Safe Mag and another
2    products that would infringe the '845 Patent,' showing zero (0) units sold, amounting to
3    $0.00 in sales and $0.00 in royalty payments[,]" and "[n]one of Cross's royalty reporting
4    forms reported any sales of licensed kits."  (Blazer Decl. at 3; <u>see also</u> ECF No. 152-10.)
5    By relying on overly restrictive interpretation of their royalty payment obligations with
6    respect to the sales of kits, Defendants may have underreported and underpaid all
7    royalties due under the Settlement Agreement.  Accordingly, Defendants should be
8    ordered to recalculate the accrued royalties for the sales of kits, as clarified in this
9    Report and Recommendation.

10    If Defendants have not made all "payments under Section 5 [of the parties
11    Settlement Agreement] that have become due" by the signing of the Settlement
12    Agreement, Defendants have not satisfied condition precedent to dismissal of the
13    action, and the Court cannot dismiss the action unless Defendants make the required
14    payments.  <u>See</u> <u>Silicon Image, Inc.</u>, 395 F.3d at 1363 ("[T]he bargain embodied by the
15    [parties' settlement agreement] made a dismissal with prejudice of [plaintiff's] patent
16    infringement claims consideration for providing the agreed upon settlement amount
17    and royalty payments"; reasoning that "[o]nce the district court determined that this
18    was the bargain entered into by the parties, it was powerless to order a dismissal with
19    prejudice of [plaintiff's] infringement claims until the parties complied with the terms of
20    the agreement.").  The Court should therefore require Defendants to tender payment of
21    all accrued royalties for the sales of kits by a date to be set by the District Court.

22    Accordingly, to the extent Defendants seek an order dismissing this action with
23    prejudice before they pay all accrued royalties for the sales of kits, as clarified in this
24    Report and Recommendation, the Court **RECOMMENDS DENYING** the motion.  To the
25    extent Defendants seek an order directing Plaintiff to dismiss the action with prejudice
26    after Defendants satisfy the condition precedent to dismissal of the action by making
27    payments of all accrued royalties for the sales of kits, the Court **RECOMMENDS**
28    **GRANTING IN PART** the motion.  Specifically, the Court **RECOMMENDS** that the District

1  Court set the deadline for the parties to file their Joint Motion to Dismiss the action

2  <u>within five days</u> of Defendants' deadline to tender full payment of royalties for the sales

3  of kits.

4       Turing to Defendants' request for $7,644.26 in attorney's fees and costs pursuant

5  to Section 14 of the Settlement Agreement, as well as "further fees and costs associated

6  with the Dismissal Motion," (ECF No. 153 at 13), Section 14 provides, in relevant part,

7  that "[t]he prevailing party in any action or proceeding to enforce this Agreement shall

8  be further entitled to recover all fees and costs associated with commencing the action

9  or proceeding, including attorneys' fees and costs."  (ECF No. 152-2 at 8.)  For the

10  reasons stated above, Defendants are not entitled to recover their attorney's fees and

11  costs sought in their Motion to Dismiss Action.

12  **D. <u>Conclusion</u>**

13       The Court **RECOMMENDS** that the District Court issue an order (1) clarifying that

14  the entirety of each of Defendants' kits, regardless of its name, is royalty bearing, and

15  (2) directing Defendants to report and tender the payment of all accrued royalties for

16  the sales of kits, as well as all accrued interest on those royalties,[6] by a date to be set by

17  the District Court.  The Court further **RECOMMENDS** that the District Court set the

18  deadline for the parties to file their Joint Motion to Dismiss the action <u>within five days</u> of

19  Defendants' deadline to tender full payment of accrued royalties and interest for the

20  sales of kits.  The Court further **RECOMMENDS GRANTING IN PART and DENYING IN**

21  **PART** Defendant's Motion to Dismiss Action [ECF No. 153], and **DENYING** Defendants'

22  request for attorney's fees and costs.

23  / / /

24  / / /

25  / / /

26

27

28  [6]  The Court's recommendation incorporates additional recommendations discussed below in the section addressing Plaintiff's Motion for Enforcement.

### III.  PLAINTIFF'S MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT AND RELATED RELIEF [ECF NO. 152]

In its Motion for Enforcement, Plaintiff seeks the following:

1)  a finding that Cross has breached the parties' settlement agreement;

2)  an order directing Cross to tender immediate full payment and reporting of the overdue royalties for sales of kits pursuant to the parties' written settlement agreement and clarifying (for the fifth time) that the entire kit, regardless of its name, is royalty bearing;

3) a finding of contempt by Cross;

4) a finding that Cross and its counsel have acted in bad faith in the course of litigating and settling this case;

5) a finding that this case is exceptional under 35 U.S.C. § 285;

6) a finding that Evolusion is entitled to enhanced damages in the form of treble damages for the overdue unpaid royalties for sales of kits;

7) a finding that Evolusion is entitled to enhanced damages in the form of treble the amount wrongfully withheld by Cross before July 24, 2020;

8) a finding that Evolusion is entitled to interest on all ordered payments;

9) a finding that Evolusion is entitled to all of its attorneys' fees and costs in connection with the parties' settlement since August 7, 2019, pursuant to the attorneys' fees provision of the parties' written agreement and further pursuant to this Court's authority in law, in equity, and by express agreement of the parties;

10) entry of sanctions against Cross's counsel (Venture LLP and Stuart C. Clark);

11) a finding that Cross's counsel (Venture LLP and Stuart C. Clark) are jointly and severally liable with Cross Engineering, LLC and Wes Cross for the above-requested damages for contempt, including all of Evolusion's attorneys' fees and costs awarded; and

12) entry of injunction against Cross, enjoining Cross from making, using, or selling any of the licensed products under the '845 Patent and the parties' settlement agreement, including kits, until all ordered payments are made (including payment of attorneys' fees and costs) and further until an independent audit of Cross's sales can be completed, with Cross bearing the full cost of the audit. Only once Cross's reported sales and fully paid royalties have been verified by the auditor, Cross may move the Court to lift the injunction.

(ECF No. 152-1 at 30–31.)

The Court initially notes that in support of its motion, Plaintiff argues that patent infringement is reserved for the federal courts and gives rise to pendent jurisdiction over related claims.  (ECF No. 159 at 5–6.)  Plaintiff contends that because the Complaint in this case includes a patent law cause of action, the Court has subject matter jurisdiction under 28 U.S.C. § 1338(a).  (Id. at 5.)  Plaintiff further asserts that once jurisdiction has been acquired through pleading a federal question, the Court may decide any issue necessary to the disposition of the case, notwithstanding that other non-federal questions of fact and law may be involved.  (Id.)  In their Opposition, Defendants maintain that this Court cannot adjudicate Plaintiff's unpleaded claim for breach of contract between nondiverse parties in the absence of a federal question.  (ECF No. 157 at 14–16, 26, 29.)

As stated above, a district court has the inherent power to enforce "a settlement agreement involving an action pending before it."  In re City Equities Anaheim, Ltd., 22 F.3d at 957 (emphasis added); TNT Mktg., Inc., 796 F.2d at 278; Dacanay, 573 F.2d at 1078.  "The Court's jurisdiction to enforce settlement agreements between parties in pending cases is well-settled in this Circuit."  Brooks v. Tarsadia Hotels, Case No.: 3:18-cv-02290-GPC-KSC, 2020 WL 5870203, at *4 (S.D. Cal. Oct. 2, 2020) (citing Doi v. Halekulani Corp., 276 F.3d 1131, 1136 (9th Cir. 2002); In re City Equities Anaheim, Ltd., 22 F.3d at 957; Wilcox v. Arpaio, 753 F.3d 872, 877 (9th Cir. 2014)).  After a district court dismisses an action, however, "[e]nforcement of a settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994).  A district court lacks jurisdiction to enforce a settlement agreement following dismissal unless the district judge either:  (1) expressly in the dismissal order, retains jurisdiction over the settlement agreement; or (2) incorporates the terms of the settlement agreement in the dismissal order.  Id. at 381–82.  A breach of the settlement agreement would then be considered a violation of the order, and ancillary jurisdiction to enforce the agreement would exist.  Id. at 381.  Otherwise, the enforcement of the

1   settlement agreement is a separate contract dispute requiring independent basis for

2   jurisdiction.  See id.

3          In this case, the action has not yet been dismissed and the case is still pending.

4   Accordingly, the Court has jurisdiction to consider Plaintiff's motion.  See In re City

5   Equities Anaheim, Ltd., 22 F.3d at 957; TNT Mktg., Inc., 796 F.2d at 278; Dacanay, 573

6   F.2d at 1078.

7   **A.  Plaintiff's Request for a Finding that Defendants Breached the Parties'**

8   **Settlement Agreement**

9          Plaintiff moves the Court to find that Defendants breached the parties'

10  Settlement Agreement.  (ECF No. 152-1 at 30.)  Defendants contend that Plaintiff has

11  not established that they have breached the Settlement Agreement by not paying

12  royalties on kits.  (ECF No. 157 at 29; see also id. at 15–16; see also ECF Nos. 153, 166.)

13         In light of the Court's findings and recommendations with respect to Defendants'

14  Motion to Dismiss Action, Plaintiff's request is premature.  If, however, Defendants do

15  not tender the payment of all accrued royalties for the sales of kits, as clarified in this

16  Report and Recommendation, by a date to be set by the District Court (presuming the

17  District Court adopts this Report and Recommendation), Plaintiff's request will become

18  ripe.  Accordingly, the Court **RECOMMENDS DENYING** Plaintiff's request as premature.

19  **B.  Plaintiff's Request for an Order Clarifying the Definition of Kit and Directing**

20  **Defendants to Report and Pay Overdue Royalties for the Sales of Kits**

21         Plaintiff asks the Court to issue an order directing Defendants to "tender

22  immediate full payment and reporting of the overdue royalties for sales of kits pursuant

23  to the parties' written settlement agreement" and clarifying that "the entire kit,

24  regardless of its name, is royalty bearing."  (ECF No. 152-1 at 30.)  Defendants oppose

25  the request.  (See ECF No. 157; see also ECF Nos. 153, 166.)

26         The Court has discussed the issues implicated by this request in detail above

27  when addressing Defendants' Motion to Dismiss Action.  For the reasons stated above,

28  the Court **RECOMMENDS** that the District Court issue an order clarifying that the

entirety of each of Defendants' kits, regardless of its name, is royalty bearing, and requiring Defendants to tender the payment of all accrued royalties for the sales of kits by a date to be set by the District Court.  The payments should be accompanied by the reporting documentation required under the terms of the parties' Settlement Agreement. The Court therefore **RECOMMENDS GRANTING** Plaintiff's request.

### C. <u>Plaintiff's Request for Finding of Contempt by Defendants</u>

Plaintiff asserts that Defendants did not make any payments for the sales of kits, and refused to timely make many settlement and royalty payments, despite multiple court orders requiring such payments.  (<u>See</u> ECF No. 152-1 at 21–22 (citing ECF No. 112; ECF No. 118 at 1-2; and ECF No. 148[7] at 8).)  Plaintiff maintains that Defendants' "consistent course of violations and unjustified nonpayment paints a picture of bad faith frivolousness, obstinance, disrespect for the Court, and intent to delay."  (ECF No. 152-1 at 22.)

Defendants argue that they have not violated any court orders and made the required payments, and Plaintiff's request should therefore be denied.  (<u>See</u> ECF No. 157 at 20–22.)  Defendants assert that this Court issued two orders requiring Defendants to make payments:  (1) the November 21, 2019 Order [ECF No. 112] and (2) January 17, 2020 Order [ECF No. 118].  (<u>Id.</u> at 10–11, 20–21.)  Defendants contend that they complied with the November 21, 2019 Order, and once the January 17, 2020 Order became final, Defendants signed the Settlement Agreement and paid all amounts owed within four days of the signing of the Agreement.  (<u>Id.</u> at 11.)

Civil contempt "is a sanction to enforce compliance with an order of the court to compensate for losses or damages sustained by reason of noncompliance."  <u>McComb v. Jacksonville Paper Co.</u>, 336 U.S. 187, 191 (1949)  Civil contempt occurs when a party disobeys a "specific and definite court order" by failing to "take all reasonable steps

---

[7] An unreacted version of this order appears on the docket as ECF No. 147.

1  within the party's power to comply." <u>Reno Air Racing Ass'n v. McCord</u>, 452 F.3d 1126,

2  1130 (9th Cir. 2006).  Civil contempt is a "severe remedy"; therefore, courts should not

3  resort to contempt when there is a "fair ground of doubt as to the wrongfulness of the

4  defendant's conduct." <u>Taggart v. Lorenzen</u>, 139 S. Ct. 1795, 1801–02 (2019) (quotation

5  omitted).  A finding of contempt is not warranted where the alleged contemnor's

6  actions were taken in good faith and on a reasonable interpretation of the court

7  order.  <u>In re Dual-Deck Video Cassette Recorder Antitrust Litig.</u>, 10 F.3d 693, 695 (9th

8  Cir. 1993).  "'Substantial compliance' with a court order is a defense to an action for civil

9  contempt." <u>Id.</u>  The party alleging contempt is required to show that the opposing party

10  violated the court order by clear and convincing evidence.  <u>Id.</u>

11      The Court issued the following orders requiring Defendants to make payments to

12  Plaintiff:

13      (1) November 21, 2019 Order required Defendants to tender the initial settlement

14  payment of $68,500, and the royalties that had accrued, including royalties for the sales

15  of kits, by December 2, 2019.  (ECF No. 112 at 2.)

16      (2) January 17, 2020 Order required Defendants to make eighteen monthly

17  payments beginning on January 24, 2020, in the amount of $3,805.56.  (ECF No. 118 at

18  1.)  The Order further required the payment of "an ongoing monthly royalty for every

19  accused product sold" in the amount of 18.77 percent, proceeding for the life of the

20  '845 Patent, due within 15 days of the end of the respective preceding month.  (<u>Id.</u>)

21  Defendants were ordered to pay the accrued royalty payments for the months of July—

22  November 2019, for sales of the accused kits by January 24, 2020.  (<u>Id.</u> at 2.)

23      (3) May 7, 2020 Order denied Defendants' Motion for Reconsideration of the

24  Court's January 17, 2020 Order, and required Defendants to comply with the terms of

25  the January 17, 2020 Order by May 29, 2020.  (ECF No. 147 at 8.)  Defendants were

26  ordered to "pay all additional payments due under the terms of the parties' settlement

27  that have accrued since the issuance of the January 17, 2020 Order by May 29, 2020."

28  (<u>Id.</u>)

After paying the initial settlement amount of $68,500 and accrued royalties, with the exception of royalties for the sales of kits, (see Clark Decl. I at 1–2), Defendants moved for reconsideration of the Court's January 17, 2020 Order, and later challenged the Court's January 17, 2020 and May 7, 2020 Orders by filing a petition for writ of mandamus in the United States Court of Appeals for the Federal Circuit, (see ECF No. 150; see also ECF No. 151 at 1–2).  On July 17, 2020, the Court of Appeals for the Federal Circuit denied Defendants' petition.  See In re Cross Eng'g, LLC, 820 F. App'x. 1021.  Several days later, on July 20, 2020, Defendants signed the parties' written Settlement Agreement, and on July 24, 2020, tendered the accrued payments, royalties, and interest, with the exception of royalties for the sales of kits.  (ECF No. 152-2; see also Cross Decl.; Clark Decl.)

The Court carefully reviewed the parties' pleadings, as well as all attached declarations and exhibits.  As discussed in detail above, the documents presented to the Court as of the filing of Plaintiff's Motion for Enforcement and Defendants' Motion to Dismiss Action, establish that Defendants have made all payments due under the parties' Settlement Agreement, with the exception of royalties for the sales of kits.  (See Blazer Decl. at 3; Clark Decl. at 3; Clark Decl. I at 1–2; Cross Decl. at 2.)  Defendants' nonpayment reportedly stemmed from their misinterpretation of the definition of a royalty bearing kit.  (See Clark Decl.; Cross Decl.)  Further, although some of the payments (not including royalties for the sales of kits) were late, Defendants paid interest on such amounts from the due date of each royalty and settlement payment, as required by the parties' Settlement Agreement.  (See Cross Decl.)

Having reviewed the declarations filed by Defendants and their counsel in opposition to the instant motion, as well as the procedural history in this case, the Court does not find that the "severe remedy" of civil contempt is warranted under the circumstances.  See Taggart, 139 S. Ct. 1795 at 1801–02 (providing that civil contempt is a "severe remedy" and courts should not resort to contempt when there is a "fair

1  ground of doubt as to the wrongfulness of the defendant's conduct.").  The Court

2  therefore **RECOMMENDS DENYING** Plaintiff's request for finding of contempt.

3      **D.  Plaintiff's Request for Finding that Defendants and Defense Counsel Acted in**

4  **Bad Faith, and Request to Impose Sanctions**

5      Plaintiff asks the Court to find that Defendants and their counsel acted in bad

6  faith in the course of litigating and settling this case.  (ECF No. 152-1 at 30.)  Plaintiff

7  further seeks an "entry of sanctions against Cross's counsel (Venture LLP and Stuart C.

8  Clark)," and "a finding that Cross's counsel (Venture LLP and Stuart C. Clark) are jointly

9  and severally liable with Cross Engineering, LLC and Wes Cross for the above-requested

10  damages for contempt, including all of Evolusion's attorneys' fees and costs awarded[.]"

11  (Id. at 30–31.)  Plaintiff seeks sanctions under Federal Rule of Civil Procedure 11, 28

12  U.S.C. § 1927, and the Court's inherent power.  (See id. at 13.)

13      Defendants and their counsel deny that they acted in bad faith, and argue that

14  Plaintiff's request for sanctions, damages, and other penalties lack merit.  (ECF No. 157

15  at 20–24, 29.)  Defendants assert that Plaintiff's claims for sanctions under 28 U.S.C.

16  § 1927 and Rule 11 are unsupported and frivolous, Defendants have not violated any

17  Court orders, and Rule 11 motion is procedurally improper.  (Id. at 22–24.)

18      A district court may sanction parties or their counsel for improper conduct under

19  Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the court's inherent power.

20  Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001).  Federal Rule of Civil Procedure

21  11(b)(1) provides the following:

22      By presenting to the court a pleading, written motion, or other paper—
23      whether by signing, filing, submitting, or later advocating it—an
    attorney . . . certifies that to the best of the person's knowledge,
24      information, and belief, formed after an inquiry reasonable under the
    circumstances . . . it is not being presented for any improper purpose, such
25      as to harass, cause unnecessary delay, or needlessly increase the cost of
26      litigation[.]

27

28

1  Id.  "If, judged by an objective standard, a reasonable basis for the position exists in both

2  law and fact at the time the position is adopted, then sanctions should not be imposed."

3  Conn v. Borjorquez, 967 F.2d 1418, 1421 (9th Cir. 1992) (quotation omitted).  Rule 11

4  "must be read in light of concerns that it will spawn satellite litigation and chill vigorous

5  advocacy"; however, its main goal is to "deter baseless filings in district court."  Cooter

6  & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990).  "Rule 11 is an extraordinary remedy,

7  one to be exercised with extreme caution."  Operating Eng'rs Pension Trust v. A-C Co.,

8  859 F.2d 1336, 1345 (9th Cir. 1988).

9       28 U.S.C. § 1927 provides:  "Any attorney . . . who so multiplies the proceedings in

10  any case unreasonably and vexatiously may be required by the court to satisfy

11  personally the excess costs, expenses, and attorneys' fees reasonably incurred because

12  of such conduct."  Id.  A court may also impose sanctions pursuant to its inherent

13  authority "if the court specifically finds bad faith or conduct tantamount to bad faith . . .

14  . including recklessness when combined with an additional factor such as frivolousness,

15  harassment, or an improper purpose."  B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1108

16  (9th Cir. 2002); see also In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d at 435 (sanctions

17  under the court's inherent power are appropriate where the counsel's conduct

18  constitutes or is tantamount to bad faith).  "[A]n attorney's reckless misstatements of

19  law and fact, when coupled with an improper purpose, . . . are sanctionable under a

20  court's inherent power."  B.K.B., 276 F.3d at 1108.

21       The Court is intimately familiar with the parties and counsel in this case in light of

22  numerous in-person and telephonic hearings it conducted before and after the

23  Mandatory Settlement Conference.  (See Docket.)  Having reviewed procedural history,

24  the arguments advanced by Defendants, as well as the declarations filed by Defendants

25  and their counsel, and for the reasons stated above, the Court does not find that

26  Defendants and their counsel acted in bad faith.

27       The Court also does not find that Defendants' and their counsel's position and

28  arguments in their filings were objectively unreasonable.  Rule 11 "extraordinary

26

remedy" is therefore not warranted.  While defense counsel was perhaps overzealous in seeking multiple clarifications of the Court's past orders, the circumstances do not establish that counsel "unreasonably and vexatiously" multiplied the proceedings.  The Court therefore finds no evidence of bad faith sufficient to warrant sanctions pursuant to the Court's inherent authority or under 28 U.S.C. § 1927.

Accordingly, the Court **RECOMMENDS DENYING** Plaintiff's request to find that Defendants and their counsel acted in bad faith in the course of litigating and settling this case.  The Court further **RECOMMENDS DENYING** Plaintiff's request for sanctions against defense counsel, Venture LLP and Stuart C. Clark, and **DENYING** Plaintiff's request for "a finding that Cross's counsel (Venture LLP and Stuart C. Clark) are jointly and severally liable with Cross Engineering, LLC and Wes Cross for the above-requested damages for contempt, including all of Evolusion's attorneys' fees and costs awarded."

**E.**  **Plaintiff's Request to Find the Case Exceptional and Award Treble Damages**

Plaintiff moves the Court to find that this case is exceptional under 35 U.S.C. § 285, and multiply damages pursuant to 35 U.S.C. § 284.  (ECF No. 152-1 at 26–28, 30.) In support, Plaintiff asserts that this case is "exceptional" in light of Defendants' "late payment, continued nonpayment with respect to kits, violations of Court orders, mischaracterizations of law and fact, frivolous contumacy, and other misconduct[.]"  (Id. at 26.)  Plaintiff argues that "the wrongfully withheld settlement payments and royalties for November 2019 to June 2020, reported by Cross on July 24, 2020, should be trebled as damages under Section 284[,]" and "the remaining amount due as unpaid royalties for kits should likewise be trebled for Cross's continued defiance of this Court and of the Federal Circuit."  (Id. at 28; see also id. at 26.)  Plaintiff further maintains that the parties' Settlement Agreement expressly provides for attorney's fees, and the release of claims only pertains to claims in the Complaint.  (ECF No. 159 at 10–11.)  Plaintiff contends that it seeks to enforce the Settlement Agreement following a post-settlement breach by Defendants, and the allegations in the Complaint do not limit or preclude any recovery potentially available for Defendants' post-settlement misconduct not alleged in

1   the Complaint.  (Id.)  Plaintiff emphasizes that it seeks damages under Section 284 in

2   addition to damages for contempt, sanctions, and attorney's fees.  (ECF No. 152-1 at

3   27.)

4          Defendants respond that Plaintiff's claim for fees based on an exceptional case

5   finding under 35 U.S.C. § 285 was released under the parties' Settlement Agreement.

6   (ECF No. 157 at 25.)  They argue that under Section 12 of the Settlement Agreement,

7   Plaintiff released "all claims . . . asserted against the Cross Parties in the Action by

8   Evolusion[,]" and a claim under 35 U.S.C. § 285 was one of Plaintiff's asserted claims.

9   (Id. (citing ECF No. 29).)  Defendants also contend that even if the claim was not

10  released, Plaintiff is not entitled to the relief it seeks because it did not prevail in this

11  case; rather, Plaintiff settled on a compromise basis, with each party acknowledging

12  that the settlement implied no admissions.  (Id.)  Defendants further assert that their

13  conduct, as well as the conduct of their counsel, was not "exceptional," and ask the

14  Court to deny Plaintiff's request.  (Id.)

15         35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award

16  reasonable attorney fees to the prevailing party."  Id.  "[A]n 'exceptional' case is simply

17  one that stands out from others with respect to the substantive strength of a party's

18  litigating position (considering both the governing law and the facts of the case) or the

19  unreasonable manner in which the case was litigated."  Octane Fitness, LLC v. ICON

20  Health & Fitness, Inc., 572 U.S. 545, 554 (2014); Highmark Inc. v. Allcare Health Mgmt.

21  Sys., Inc., 572 U.S. 559, 563 (2014) (same).  District courts have discretion to determine

22  whether a case is "exceptional," considering the totality of the circumstances, and may

23  "consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective

24  unreasonableness (both in factual and legal components of the case) and the need in

25  particular circumstances to advance considerations of compensation and deterrence.'"

26  Id. at 554 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)); see also

27  SunEarth, Inc. v. Sun Earth Solar Power Co., 839 F.3d 1179, 1181 (9th Cir. 2016) (same).

28

1   A patent litigant must establish their entitlement to attorney's fees under Section 285

2   by a preponderance of the evidence.  <u>Octane Fitness, LLC</u>, 572 U.S. at 557.

3       35 U.S.C. § 284 further provides, in relevant part, that "[w]hen the damages are

4   not found by a jury" a court "may increase the damages up to three times the amount

5   found or assessed."  <u>Id.</u>  "The subjective willfulness of a patent infringer, intentional or

6   knowing, may warrant enhanced damages, without regard to whether his infringement

7   was objectively reckless."  <u>Halo Elecs., Inc. v. Pulse Elecs., Inc.</u>, 136 S. Ct. 1923, 1933

8   (2016).  While "awards of enhanced damages are discretionary, . . . 'courts should

9   continue to take into account the particular circumstances of each case in deciding

10  whether to award damages, and in what amount.'"  <u>Georgetown Rail Equip. Co. v.</u>

11  <u>Holland L.P.</u>, 867 F.3d 1229, 1244 (Fed. Cir. 2017) (quoting <u>Halo Elecs., Inc.</u>, 136 S. Ct. at

12  1932).

13      This case settled during a Mandatory Settlement Conference, and each party

14  acknowledged in their executed written Settlement Agreement that the settlement

15  implied no admissions.  (<u>See</u> ECF No. 152-2 (containing Section 2 of the parties'

16  Settlement Agreement, which provides that "it is understood and agreed that this is a

17  compromise and release of disputed claims," and "nothing contained herein shall be

18  construed as an admission by any Party of liability or responsibility of any kind, or a

19  concession by any Party that assertions of any other Party with respect to any claims or

20  defenses are valid.").)  Further, despite the parties' settlement, the case has not yet

21  been dismissed.  Finally, as discussed above, the Court cannot find that Defendants

22  acted in bad faith, or that the arguments they have been advancing were frivolous or

23  objectively unreasonable.  Based on the record before it, and considering the totality of

24  the circumstances in this case, the Court concludes that Defendants' and their counsel's

25

26

27

28

1  conduct was not "so 'exceptional' as to justify an award of fees."[8]  Octane Fitness, LLC,

2  572 U.S. at 555 (stating that a district court may award attorneys' fees when a "party's

3  unreasonable conduct . . . is nonetheless so 'exceptional' as to justify an award of

4  fees."); see also Highmark Inc., 572 U.S. at 564 ("'[A]s a matter of the sound

5  administration of justice,' the district court 'is better positioned' to decide whether

6  a case is exceptional, because it lives with the case over a prolonged period of time.").

7  The Court therefore **RECOMMENDS DENYING** Plaintiff's requests to find the case

8  exceptional and award treble damages.

9      **F.**  **Plaintiff's Request for Interest on All Ordered Payments**

10         Plaintiff seeks a finding that it is entitled to receive interest on all ordered

11  payments.  (ECF No. 152-1 at 30.)  Defendants oppose the request.  (See ECF No. 157.)

12         The parties' Settlement Agreement contains a provision stating the following:

13      [I]f the records reveal an underpayment to Evolusion then Cross

14      Engineering shall pay Evolusion the amount of underpayment due together
    with simple interest thereon at a rate ten percent (10%) per annum for the

15      underpayment amount due from the time when the payment thereof

16      should have been made pursuant hereto until the time of actual payment
    thereof on behalf of or by Cross Engineering.

17

18  (ECF No. 152-2 at 7.)  As discussed above, the Court recommends issuing an order

19  directing Defendants to pay all accrued royalties for the sales of kits.  Consistent with

20  this recommendation, Defendants should pay interest on the accrued royalties for the

21  sales of kits, pursuant to the terms of the parties' Settlement Agreement.  Accordingly,

22  the Court **RECOMMENDS GRANTING** Plaintiff's request.

23  / / /

24  / / /

25

26

27    [8]  Because the Court finds that Plaintiff's request lacks merit, it needs not address Defendants'
argument that Plaintiff's claim for fees based on an exceptional case finding under 35 U.S.C. § 285 was

28  released under the parties' Settlement Agreement.  (See ECF No. 157 at 25).

1   **G. Plaintiff's Request for Attorneys' Fees and Costs in Connection with the Parties'**

2   **Settlement**

3        Plaintiff seeks a finding that it is entitled to "all of its attorneys' fees and costs in

4   connection with the parties' settlement since August 7, 2019, pursuant to the attorneys'

5   fees provision of the parties' written agreement and further pursuant to this Court's

6   authority in law, in equity, and by express agreement of the parties[.]"  (ECF No. 152-2

7   at 30; see also id. at 25–26.)  Plaintiff argues that the parties' Settlement Agreement

8   provides for attorney's fees, the release of claims only pertains to claims in the

9   Complaint, and Plaintiff seeks to enforce the Settlement Agreement following a post-

10  settlement breach by Defendants.  (Id. at 26; see also ECF No. 159 at 10–11.)  Plaintiff

11  further states that if the Court makes the above findings of Defendants' liability for

12  attorneys' fees and costs, Plaintiff will provide a full accounting of the fees and costs

13  incurred since August 7, 2019.  (ECF No. 152-2 at 31.)

14       Defendants contend that attorney's fees under the Settlement Agreement are

15  only recoverable following notices of default given under the Settlement Agreement.

16  (ECF No. 157 at 26–28.)  Defendants further assert that even if Plaintiff were to be found

17  entitled to some award of fees, costs, or damages, Plaintiff's failure to submit

18  evidentiary support for its claims requires them to be dismissed for failure of proof.  (Id.

19  at 27.)

20       Section 14 of the parties' Settlement Agreement provides the following in

21  relevant part:

22       If the defaulting party fails to cure the breach within ten (10) days after . . .
         written notice, the Party not in default shall be entitled to commence such
23       legal proceedings as may be appropriate to enforce this Agreement, and/or
         to seek any other appropriate remedy available in law, including specific
24       performance, and/or to seek damages and/or injunctive relief.  The
         prevailing party in any action or proceeding to enforce this Agreement shall
25       be further entitled to recover all fees and costs associated with
         commencing the action or proceeding, including attorneys' fees and costs.
26

27

28

1   (ECF No. 152-2 at 8.)  As discussed above, the Court does not find that at this stage of

2   the proceedings Defendants breached the parties' Settlement Agreement.  Further,

3   under the facts of this case, the Court does not find that the award of fees and costs is

4   warranted "pursuant to this Court's authority in law [and] in equity."  Accordingly, the

5   Court **RECOMMENDS DENYING** Plaintiff's request.[9]

6   **H. <u>Plaintiff's Request for Permanent Injunction</u>**

7   Plaintiff moves the Court to

8   enjoin Cross from making, using, or selling any of the licensed products
    under the '845 Patent and the parties' settlement agreement, including
9   kits, until all ordered payments are made (including payment of attorneys'
    fees and costs) . . . until an independent audit of Cross's sales can be
10  completed, with Cross bearing the full cost of the audit.

11

12  (ECF No. 152-1 at 31; <u>see also</u> <u>id.</u> at 28–31.)  In its reply, Plaintiff clarifies that it seeks a

13  permanent injunction barring Defendants from selling any of the licensed products,

14  including kits, for the remaining term of the '845 Patent.  (ECF No. 159 at 11.)

15  Defendants argue that Plaintiff has not established that the circumstances in this case

16  warrant the issuance of an injunction.  (<u>Id.</u>)

17  35 U.S.C. § 283 authorizes courts to issue injunctions in patent cases.  A plaintiff

18  seeking a permanent injunction must demonstrate the following:

19  (1) that it has suffered an irreparable injury; (2) that remedies available at
    law, such as monetary damages, are inadequate to compensate for that
20  injury; (3) that, considering the balance of hardships between the plaintiff
    and defendant, a remedy in equity is warranted; and (4) that the public
21  interest would not be disserved by a permanent injunction.

22

23

24  _____

25  [9]  Defendants also seek an award of their fees and costs associated with opposing Plaintiff's Motion for
    Enforcement under Section 14 of the Settlement Agreement, in the sum of $12,660, as well as
26  "additional fees and costs as may be incurred."  (ECF No. 157 at 27–29.)  The Court does not find that
    the request is warranted under the circumstances and **RECOMMENDS DENYING** Defendant's request
27  for attorney's fees and costs.

28

1  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). "The decision to grant or

2  deny permanent injunctive relief is an act of equitable discretion by the district court,

3  reviewable on appeal for abuse of discretion." Id.

### 1. Irreparable Injury

5  Plaintiff contends that Defendants, its direct competitors, have been selling kits

6  licensed under the '845 Patent since August 7, 2019 without paying royalties, and "every

7  sale of an accused Cross product harms Evolusion by way of lost profits." (ECF No. 152-1

8  at 28.) Although a competitor's underpayment of royalties constitutes an injury,

9  Plaintiff does not explain why its alleged injury is irreparable. For example, Plaintiff does

10  not explain why the payment of the accrued royalties for the sales of kits, as well as

11  interest on those royalties, would not adequately compensate it for Defendants' alleged

12  nonpayment of such royalties. Accordingly, the Court finds that Plaintiff has not

13  established irreparable injury, and this factor therefore weighs against the issuance of a

14  permanent injunction.

### 2. Adequacy of Legal Remedies

16  The second factor asks whether legal remedies are inadequate to compensate

17  Plaintiff for its injuries. Plaintiff asserts that "[i]f defendants cannot be made to pay

18  what they owe, then Evolusion's remedy at law has proven inadequate." (ECF No. 128-1

19  at 28; see also ECF No. 152-1 at 29 (citing ECF No. 128-1 at 28).) Defendants have paid

20  all royalties with the exception of the royalties on the sales of kits, and Defendants'

21  underpayment stemmed from a misconstrued definition of royalty bearing kits. There is

22  no evidence before the Court indicating that Defendants are unable to pay the royalties

23  at issue. Furthermore, the parties' fully executed Settlement Agreement gives Plaintiff

24  audit rights to inspect Defendants' financial, manufacturing, and other reporting

25  documents necessary to verify Defendants' reported sales. (See ECF No. 152-2 at 7–8.)

26  The Settlement Agreement also provides Plaintiff with various remedies, including

27  specific performance, damages, and injunctive relief, in case of breach by Defendants.

28  (See id. at 8.) In the absence of any other explanation why legal remedies are

1   inadequate to compensate for Plaintiff's injuries, the Court finds that this factor weighs

2   against the issuance of a permanent injunction.

3           **3.  Balance of Hardships**

4        The third factor requires the Court to balance the hardships between Plaintiff and

5   Defendants.  Plaintiff does not adequately explain what hardships it would suffer if an

6   injunction does not issue; rather, it asserts that many alternative non-infringing

7   methods exist for making a firearm compliant with California law, and Defendants could

8   thus offer alternative methods of modifying a firearm to comply with California law

9   without infringing Plaintiff's patent.  (ECF No. 128-1 at 28; <u>see also</u> ECF No. 152-1 at 29

10  (citing ECF No. 128-1 at 28).)  The Court is not persuaded that the use of the alternative

11  methods of modifying a firearm will not impose some hardship on Defendants.  Notably,

12  Plaintiff carefully negotiated the terms of the Settlement Agreement with Defendants,

13  which is now fully executed.  (<u>See</u> ECF No. 152-2.)  The Settlement Agreement requires

14  Defendants' ongoing royalty payments and provides mechanisms for the resolutions of

15  disputes with respect to such payments.  (<u>See id.</u>)  Accordingly, this factor weighs

16  against the issuance of a permanent injunction.

17          **4.  Public Interest**

18       The fourth factor requires Plaintiff to establish that the public interest would be

19  served by a permanent injunction.  "[T]he public interest nearly always weighs in favor

20  of protecting property rights in the absence of countervailing factors, especially when

21  the patentee practices his inventions."  <u>Apple v. Samsung</u>, 809 F.3d 633, 645–46 (Fed.

22  Cir. 2015).  In this case, the public interest in protecting patent rights and discouraging

23  future wrongdoing would be served by the issuance of a permanent injunction.  This

24  factor therefore weighs in favor of the issuance of permanent injunction.

25       After considering the equitable factors, the Court concludes that the majority of

26  the factors weigh against imposing a permanent injunction.  Accordingly, the Court

27  **RECOMMENDS DENYING** Plaintiff's request for the issuance of a permanent injunction.

28  <u>See</u> <u>Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.</u>, CASE NO. 06cv2433 DMS (CAB), 2008

WL 11337489, at *2 (S.D. Cal. Nov. 18, 2008) (denying plaintiff's motion for entry of permanent injunction in a patent case, where the public interest factor weighed in favor of the issuance of a permanent injunction, but the remaining factors weighed against such injunction).

Turning to Plaintiff's request to impose the entire cost of audit on Defendants, Section 13.3 of the parties' Settlement Agreement provides that "Evolusion shall bear the full cost of preparing the annual report, unless there is more than a five percent (5%) underreporting discrepancy found, in which case Cross Engineering shall bear the full cost in addition to paying the royalties due and interest as set out in Section 1.1, *supra*."  (ECF No. 152-2 at 7.)  At this point, Plaintiff's request is premature and speculative because there is no evidence before the Court showing that there is an underreporting discrepancy exceeding five percent.  Even if such discrepancy exists, the parties carefully negotiated the above provision detailing their payment obligations in case of payment discrepancies.  Because the parties' executed Settlement Agreement expressly describes their payment obligations for an audit, the Court **RECOMMENDS DENYING** Plaintiff's request to issue an order imposing the costs of the audit on Defendants.

### I. Conclusion

For the reasons stated above the Court **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Plaintiff's Motion for Enforcement [ECF No. 152].  The Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's request for an order (1) clarifying that the entirety of each of Defendants' kits, regardless of its name, is royalty bearing, and (2) directing Defendants to report and tender the payment of all accrued royalties for the sales of kits, as well as all accrued interest on those royalties, by a date to be set by the District Court.  The Court **RECOMMENDS DENYING** all of Plaintiff's remaining requests in the Motion for Enforcement [ECF No. 152].  The Court further **RECOMMENDS DENYING** Defendant's request for an award of fees and costs associated with opposing Plaintiff's Motion for Enforcement.

## IV.  CONCLUSION AND RECOMMENDATION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an order:  (1) adopting this Report and Recommendation; (2) **GRANTING IN PART and DENYING IN PART** Plaintiff's Motion for Enforcement [ECF No. 152]; and (3) **GRANTING IN PART and DENYING IN PART** Defendants' Motion to Dismiss Action [ECF No. 153].

**IT IS ORDERED** that no later than **February 22, 2021**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 26, 2021**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated:  February 12, 2021

Honorable Michael S. Berg
United States Magistrate Judge

18cv871-DMS(MSB)